1

2

3

4

5

6

7

8             UNITED STATES DISTRICT COURT

9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CLARISSA FLORES,                          No.  1:19-cv-01477-DAD-BAM

12              Plaintiff,

13        v.                                   ORDER GRANTING DEFENDANT
                                               CORIZON HEALTH INC.'S MOTION TO
14   COUNTY OF FRESNO, at al.,                 DISMISS

15              Defendants.                    (Doc. No. 17)

16

17        This matter is before the court on the motion to dismiss filed by defendant Corizon Health

18   Inc. ("Corizon") on February 4, 2020.  (Doc. No. 17.)  On February 25, 2020, the court deemed

19   the pending motion suitable for decision on the papers pursuant to Local Rule 230(g).  (Doc. No.

20   22.)  For the reasons set forth below, the court will grant Corizon's motion to dismiss.

21                              **BACKGROUND**

22        On June 13, 2019, plaintiff Clarissa Flores filed her original complaint in this civil rights

23   action in the Fresno County Superior Court naming the following defendants:  County of Fresno;

24   Sheriff Margaret Mims, in her individual and official capacities; Corizon Health, Inc.; Obadina,

25   M.D.; Newell, M.D.; Laura, R.N.; DOES 1–20 (unknown Fresno county law enforcement

26   officers); and DOES 21–100 (unknown licensed physicians employed by Corizon).  (Doc. No. 1-

27   1.)  On October 17, 2019, defendants County of Fresno, Sheriff Mims, and Corizon filed a joint

28   notice of removal, removing this action to this federal court.  (Doc. No. 1.)  On January 16, 2020,

1

1  plaintiff filed a first amended complaint ("FAC"), in which she named as defendants the County

2  of Fresno, Sheriff Mims, Corizon, and DOES 1–100.  (Doc. No. 14 ("FAC").)[1]

3        In her FAC, plaintiff asserts four causes of action:  (1) a 42 U.S.C. § 1983 claim against

4  defendants Sheriff Mims, Corizon, DOES 1–20, and DOES 21–100 for deliberate indifference to

5  her serious medical needs in violation of the Eighth Amendment of the U.S. Constitution; (2) a

6  claim under California Civil Code § 52.1, the California Bane Act, against all defendants; (3) a

7  California state law negligence claim against all defendants; and (4) a claim under California

8  Government Code § 845.6 against defendants County of Fresno, Mims, and DOES 1–20.  (FAC

9  at 9–12.)  Plaintiff alleges that DOES 21-100 are "employees and/or agents of defendant Corizon,

10  working as medical directors or medical providers of defendant County of Fresno's jails,

11  responsible for overseeing and providing medical care to prisoners . . .."  (*Id*. at ¶ 8.)  Plaintiff

12  also alleges that Corizon "provided medical and nursing care to prisoners and detainees in Fresno

13  County jails," and Corizon and DOES 21–100 "are responsible for making and enforcing policies,

14  procedures, and training related to the medical care of prisoners and detainees . . .."  (*Id*. at ¶ 7.)

15        Plaintiff alleges as follows in the FAC.  Due to the untimely, grossly negligent, and

16  improper medical care that plaintiff received during her incarceration in connection with a parole

17  violation at the Fresno County Jail from April through June 2018, plaintiff suffered loss of

18  eyesight and went "permanently and almost totally blind."  (*Id*. at ¶¶ 14–16.)  Plaintiff started

19  complaining to jail officials of suffering from nausea, vomiting, and headaches on April 29 and

20  April 30, 2018, and was misdiagnosed as having the flu.  (*Id*. at ¶ 17.)  Plaintiff returned to the

21  /////

22  /////

23  _____

24  [1]  On October 31, 2019, Corizon filed a motion for judgment on the pleadings.  (Doc. No. 6.)  On December 17, 2019, the court denied Corizon's motion as prematurely filed because three of the

25  named defendants (Obadina, M.D.; Newell, M.D.; and Laura, R.N.) had not been served with the complaint, and thus the pleadings were not closed as required by Federal Rule of Civil Procedure

26  12(c).  (Doc. No. 11.)  In granting plaintiff's request for leave to file an amended complaint, the court provided plaintiff additional time to serve all defendants or request dismissal of any

27  defendants that were not served.  (*Id*.)  Plaintiff did not file with the court a request to dismiss any defendants.  However, because plaintiff's FAC no longer names Obadina, M.D.; Newell, M.D.;

28  and Laura, R.N. as defendants, the court will dismiss them from this action.

1    jail medical clinic on May 3, May 6, and May 8, 2018,[2] complaining of headaches, dizziness, pain

2    in her head, neck, and back, difficulty walking, and occasional vomiting.  (*Id*. at ¶¶ 18–20.)  On

3    May 11, 2018, plaintiff returned to the clinic, complaining of pain and headaches and stating that

4    she could not walk without assistance.  (*Id*. at ¶ 21.)  Plaintiff was scheduled to see Dr. Olga

5    Bergovsky, a physician employed by Corizon, on May 12, 2018, and "[d]espite [plaintiff's]

6    history of complaints and her presentation on that date that she had upper body weakness for over

7    the last week, that she was unable to get herself out of bed, bilateral pupil dilation, and severe

8    headaches, she was treated as a malingerer involved in drug seeking behavior."  (*Id*.)  From that

9    point forward, according to plaintiff, her medical complaints were summarily dismissed and went

10   untreated on repeated visits.  (*Id*. at ¶ 22.)  "On her May 14, 2018 visit, she could not even walk,"

11   and on the following day, she could not walk without assistance.  (*Id*. at ¶¶ 23, 24.)  "On May 16,

12   2018, she reported that she was too weak even to come to sick call at the clinic," and in the

13   following days, she continued to complain of severe headaches, impaired mobility, generalized

14   weakness, and upper back and neck pain.  (*Id*. at ¶¶ 25–27.)

15          On May 23, 2018, plaintiff started complaining that she "was losing her ability to see" and

16   "that she thought she may have had a stroke."  (*Id*. at ¶ 28.)  "According to the notes from her

17   examination, she had positive signs of cerebellar involvement, her PERRLA was sluggish, finger

18   to nose slow and difficult, and she reported total inability to see out of her right eye with limited

19   vision in her left eye.  Plaintiff was dizzy and unable to walk."  (*Id*.)  The next day, plaintiff stated

20   she was unable to walk, but her "concerns were discounted and it was noted that she was, by

21   report, able to walk earlier."  (*Id*. at ¶ 29.)  On May 27, 2018, plaintiff's complaints were listed as

22   "methamphetamine withdrawal complaints" although she "had been incarcerated continuously for

23   over a month and []methamphetamine withdrawal acute phase is 24 hours and total withdrawal

24   lasts less than a week."  (*Id*. at ¶ 30.)  Plaintiff's health worsened, "yet she received no care other

25   than Tylenol and antacids."  (*Id*.)  "On June 4, 2018, plaintiff told medical staff that for the past

26   couple of weeks she had lost her vision," and she "received no meaningful medical care."  (*Id*. at

27

28   [2]  The court assumes that the dates alleged in ¶¶ 18 and 19 of the FAC—May 3, 2019 and May 6,
     2019—are a typographical error and that plaintiff intended to allege those dates in 2018.

¶ 31.)  On June 13, 2018, plaintiff was taken to Community Regional Medical Center, and their records state:  "Today, the jail docs took patient to her first MD appointment during all this time and she saw Dr. Salahuddin here at clinic who saw severe optic nerve swelling."  (*Id*. at ¶ 32.)

It is asserted in the FAC that "the lack of timely and proper medical care and attention over time, resulted in plaintiff being rendered permanently and almost totally blind."  (*Id*. at ¶ 14.)  In particular, plaintiff alleges that the medical care she received at the jail "was woefully negligent and lead [sic] to plaintiff suffering severe injury, including but not limited to blindness."  (*Id*. at ¶ 35.)  According to plaintiff, Corizon and DOES 21–100 "failed to follow appropriate protocols for assessing, monitoring, and necessary medical treatment of plaintiff and for insuring appropriate follow-up care for plaintiff," and that their acts and omissions "were at all material times pursuant to the actual customs, policies, practices, and procedures of the County of Fresno and/or Corizon "  (*Id*. at ¶¶ 8, 10.)

In response to plaintiff's FAC, Corizon filed the pending motion to dismiss on February 4, 2020, arguing that plaintiff has failed to state a claim against Corizon.  (Doc. No. 17.)  Plaintiff filed an opposition to the pending motion on February 18, 2020 (Doc. No. 20), and on February 21, 2020, Corizon filed its reply thereto (Doc. No. 21).

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light

4

1  most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

2  *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth

3  of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788

4  F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations,

5  "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*,

6  556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a

7  formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also*

8  *Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by

9  mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the

10  plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws

11  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

12  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

13  **ANALYSIS**

14       Corizon moves to dismiss all of plaintiff's claims against it, arguing that: (1) plaintiff has

15  failed to sufficiently allege facts to maintain her § 1983 deliberate indifference claim against

16  Corizon under a *Monell* theory of liability; (2) plaintiff has failed to state a cognizable Bane Act

17  claim because she does not sufficiently allege that "threat, intimidation, or coercion" interfered

18  with her exercise of her rights or that Corizon intended to violate her rights; and (3) plaintiff's

19  vague and conclusory allegations of Corizon's negligence are insufficient to state a cognizable

20  negligence claim. (Doc. Nos. 17 at 5, 10; 21 at 2–7.) The court will address the arguments

21  advanced by defendant Corizon and plaintiff as to each of plaintiff's claims in turn below.

22  **A.**    **Section 1983 Claim for Deliberate Indifference to Serious Medical Needs**

23       To succeed on a § 1983 claim, a plaintiff must allege and ultimately show that: (1) the

24  conduct complained of was committed by a person acting under color of state law; and (2) the

25  conduct deprived the plaintiff of a federal constitutional or statutory right. *Patel v. Kent Sch.*

26  *Dist.*, 648 F.3d 965, 971–72 (9th Cir. 2011) (citing *Tatum v. City & County of San Francisco*, 441

27  F.3d 1090, 1094 (9th Cir. 2006)). Here, plaintiff alleges that Corizon acted under color of state

28  law to deprive plaintiff of her Eighth Amendment right to be free of cruel and unusual

1    punishment, in violation of 42 U.S.C. § 1983.[3]  (FAC at ¶ 42.)

2           To state an Eighth Amendment claim based on alleged inadequate medical treatment in

3    prison, an inmate must allege facts showing "deliberate indifference to serious medical needs."

4    *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "In the Ninth Circuit, the test for deliberate

5    indifference consists of two parts."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  "First,

6    the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a

7    prisoner's condition could result in further significant injury or the unnecessary and wanton

8    infliction of pain.'"  *Id.* (citation omitted).  "Second, the plaintiff must show the defendant's

9    response to the need was deliberately indifferent."  *Id.*  This second prong "may appear when

10   prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown

11   by the way in which prison physicians provide medical care."  *Hutchinson v. United States*, 838

12   F.2d 390, 394 (9th Cir. 1988).   However, "[m]ere negligence in diagnosing or treating a medical

13   condition, without more, does not violate a prisoner's Eighth Amendment rights."  *Id.*

14          Plaintiff asserts a § 1983 claim for deliberate indifference to her serious medical needs

15   against Corizon based on her allegations that Corizon acted "with deliberate indifference to [her]

16   complaints of headaches, confusion, and increasing vision problems" and "failed to attend to her

17   obvious medical needs despite a substantial risk that her condition could deteriorate to the point

18   of plaintiff becoming blind and, indeed she became blind because of the deliberate indifference to

19   her serious medical needs."  (FAC at ¶ 41.)  Plaintiff contends that Corizon's conduct resulted in

20   a direct violation of her Eighth Amendment right to be free from cruel and unusual punishment

---

21   [3]  Plaintiff also mentions the Fourteenth Amendment in her allegations, but she alleges that she
22   was incarcerated in the county jail for a parole violation.  As such, the Eighth Amendment
     provides the proper standard for assessing her claim, not the Fourteenth Amendment.  *See Castro*
23   *v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (*en banc*) ("Inmates who sue
     prison officials for injuries suffered while in custody may do so under the Eighth Amendment's
24   Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth
     Amendment's Due Process Clause."); *see also Flores v. Mesenbourg*, No. 95-17241, 1997 WL
25   303277, at *1 (9th Cir. June 2, 1997) (holding that a convicted prisoner who was incarcerated for
     a parole violation "must rely on the Eighth Amendment to support his claim" because "[h]is
26   original conviction is the authority under which he was confined after his parole violation");
     *Jensen v. County of Los Angeles*, No. 16-cv-01590-CJC-RAO, 2017 WL 10574058, at *7 (C.D.
27   Cal. Jan. 6, 2017) ("Claims by those who have been incarcerated for parole violations arise under
28   the Eighth Amendment.")

1   and is thus actionable under § 1983.  (*Id*. at ¶ 42.)  However, plaintiff does not allege on what

2   basis Corizon—an entity defendant—can be held liable under § 1983.  Nevertheless, the court

3   notes that because Corizon contracted with the County of Fresno to provide medical care in the

4   county jail, Corizon may be held liable under a *Monell* theory.[4]  Indeed, Corizon's arguments in

5   support of its motion to dismiss focus on plaintiff's failure to sufficiently allege *Monell* liability.

6   (Doc. No. 17 at 3, 5–9.)  Accordingly, the court will evaluate whether plaintiff has sufficiently

7   alleged facts in support of entity liability under *Monell* with respect to her § 1983 claim against

8   Corizon.

9          It is well-established that an entity "cannot be held liable *solely* because it employs a

10  tortfeasor—or, in other words, [an entity] cannot be held liable under § 1983 on a *respondeat*

11  *superior* theory."  *Monell*, 436 U.S. at 691.  To establish entity liability under *Monell*, a plaintiff

12  must ultimately prove:  "(1) that the plaintiff possessed a constitutional right of which she was

13  deprived; (2) that the [entity] had a policy; (3) that this policy amounts to deliberate indifference

14  to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the

15  constitutional violation."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)

16  (citation omitted).  A plaintiff can show the existence of an entity's policy in one of three ways.

17  *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014).  First, an entity may be

18  held liable when it acts "pursuant to an expressly adopted policy."  *Id.* (citing *Monell*, 436 U.S. at

19  694).  Second, an entity may be held liable for a "longstanding practice or custom."  *Id.*  Such

20

21  [4]  *See Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978).  The Ninth Circuit has held
    that *Monell* applies to claims against private entities under § 1983.  *Tsao v. Desert Palace, Inc.*,
22  698 F.3d 1128, 1139 (9th Cir. 2012) (holding that there is "no basis in the reasoning underlying
    *Monell* to distinguish between municipalities and private entities acting under color of state law");
23  *see also Estate of Jessie P. Contreras v. County of Glenn*, No. 2:09-cv-2468, 2010 WL 4983419,
    at *4 (E.D. Cal. Dec. 2, 2010) (a private entity "that contracts with the government to provide
24  medical and mental health care may be considered a state actor whose conduct constitutes state
    action under Section 1983") (citing *Jensen v. Lane County*, 222 F.3d 570, 574–75 (9th Cir.
25  2000)).  Indeed, in other lawsuits asserting § 1983 claims against Corizon, courts have found that
    Corizon can be held liable under *Monell*.  *See Starr v. Alameda Cty. Jail*, No. 5:12-cv-04400,
26  2016 WL 6161519, at *2 (N.D. Cal. Oct. 24, 2016) ("the holdings of *Monell* and its progeny
    apply to Corizon"); *Johnson v. Corizon Health, Inc.*, No. 6:13-cv-1855, 2015 WL 1549257, at
27  *10 (D. Or. Apr. 6, 2015) ("An entity such as Lane County or Corizon cannot be held liable under
    a theory of respondeat superior . . . [but] Corizon can be liable under [*Monell*].").
28

1  circumstances may arise when, for instance, the entity "fail[s] to implement procedural

2  safeguards to prevent constitutional violations" or when it fails to adequately train its employees.

3  *Tsao*, 698 F.3d at 1143 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)).  Third, an

4  entity may be held liable when "an official with final policy-making authority ratified a

5  subordinate's unconstitutional decision or action and the basis for it."  *Gillette v. Delmore*, 979

6  F.2d 1342, 1346–47 (9th Cir. 1992).

7       To state a *Monell* claim against Corizon, plaintiff "must demonstrate that an 'official

8  policy, custom, or pattern' on the part of [Corizon] was 'the actionable cause of the claimed

9  injury.'"  *Tsao*, 698 F.3d at 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d

10  1010, 1022 (9th Cir. 2008)); *see also Larry v. Corizon Health*, No. 17-cv-00156-SVW-PJW,

11  2018 WL 6136790, at *3 (C.D. Cal. Feb. 2, 2018), *report and recommendation adopted*, 2018

12  WL 6137168 (C.D. Cal. Mar. 6, 2018) (dismissing a § 1983 claim against Corizon where the

13  plaintiff failed to set forth "the policies, practices, customs, or patterns [that] were the moving

14  force behind the alleged deprivations"); *Ellis v. Corizon Inc*., 787 F. App'x 453, 453–454 (9th

15  Cir. 2019) (finding that the district court "properly granted summary judgment on Ellis's

16  deliberate indifference claim against defendant Corizon Inc. because Ellis failed to establish a

17  genuine dispute of material fact as to whether any policy or custom of Corizon Inc. caused him to

18  suffer a constitutional injury")[5].

19       As the district court in *McFarland v. City of Clovis*, 163 F. Supp. 3d 798, 802 (E.D. Cal.

20  2016) explained:

21       Allegations of *Monell* liability will be sufficient for purposes of
         Rule 12(b)(6) where they:    (1) identify the challenged
22       policy/custom; (2) explain how the policy/custom is deficient; (3)
         explain how the policy/custom caused the plaintiff harm; and (4)
23       reflect how the policy/custom amounted to deliberate indifference,
         i.e. show how the deficiency involved was obvious and the
24       constitutional injury was likely to occur.

25       Here, Corizon contends that although plaintiff has "vaguely alluded to *Monell* theories" in

26  her FAC, her allegations fail to identify "the 'specific content' or 'specific nature' of whatever

27  _____

28  [5]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
     36-3(b).

1   ostensibly deficient policy or practice she is claiming" and how any such unspecified policy

2   reflects indifference by Corizon or caused any underlying rights violation.  (Doc. No. 17 at 5–7)

3   (citing *McFarland*, 163 F. Supp. 3d at 802).

4         In her opposition to Corizon's motion to dismiss, plaintiff flatly states her "contention that

5   the complaint as currently pled provides sufficient notice of her claims to survive a motion to

6   dismiss." (Doc. No. 20 at 3.)  Plaintiff points to her factual allegations regarding her complaints

7   and symptoms made in May 2018, and she contends that those allegations are sufficient to show

8   Corizon acted with deliberate indifference to her serious medical condition.  (*Id*. at 2) (citing FAC

9   at ¶¶ 21–31).  However, plaintiff does not address any of Corizon's arguments regarding her

10  purported failure to allege *Monell* liability.

11        The court agrees that plaintiff has not sufficiently alleged facts addressing the requisite

12  elements for entity liability under *Monell* because she has not alleged the existence of a policy,

13  practice, or custom on the part of Corizon.  While plaintiff's allegations provide some specificity

14  regarding the dates of her visits to the jail medical clinic and the symptoms she complained of on

15  those days, none of those allegations describe what she was told by clinic staff during those visits

16  or what actions were—or were not—taken by clinic staff on those visits.  Thus, plaintiff has not

17  even alleged *what* conduct Corizon employees actually engaged in during her visits to the jail

18  medical clinic, let alone that such conduct was engaged in pursuant to a Corizon policy or was

19  undertaken so consistently and frequently such that it could be deemed Corizon's custom.  *See*

20  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be

21  predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

22  duration, frequency and consistency that the conduct has become a traditional method of carrying

23  out policy.").

24        Moreover, plaintiff alleges that Corizon "failed to follow appropriate protocols for

25  assessing, monitoring, and necessary medical treatment of plaintiff and for insuring [sic]

26  appropriate follow-up care for plaintiff" (FAC at ¶ 8), but plaintiff does not allege with any

27  specificity what protocol Corizon allegedly failed to follow.  Similarly, plaintiff alleges in

28  conclusory fashion that Corizon failed "to reasonably train their medical staff in the proper and

9

1    reasonable assessment and care of inmates" and "to implement and enforce generally accepted,

2    lawful policies and procedures at the jail," and that these failures "reflect Corizon's policies

3    implicitly ratifying and/or authorizing the deliberate indifference to serious medical needs by its

4    medical healthcare staff . . .."  (FAC at ¶ 36.)  But, plaintiff has not set forth any factual

5    allegations regarding conduct by individual Corizon employees[6] and there can therefore be no

6    inferences drawn that Corizon ratified or authorized any such unspecified conduct by unspecified

7    employees.

8            Accordingly, the court concludes that plaintiff has failed to allege the existence of a policy

9    or custom by Corizon, and thus her allegations are insufficient to show *Monell* liability with

10   respect to her § 1983 claim against Corizon.  *See Deloney v. County of Fresno*, No. 1:17-cv-

11   01336-LJO-EPG, 2018 WL 3388921, at *8 (E.D. Cal. July 11, 2018) (finding plaintiff's

12   "generalized and conclusory allegations do not provide sufficient factual content to plausibly

13   infer that a Corizon policy or custom existed or that it was the 'moving force behind the

14   constitutional violation,' as required to state a *Monell* claim against an entity such as Corizon");

15   *Klahn v. Alameda Cty. Sheriff's Dep't*, No. 16-cv-00833-JCS, 2017 WL 565050, at *17 (N.D.

16   Cal. Feb. 13, 2017) (dismissing a deliberate indifference claim under *Monell* where the plaintiff

17   did "not identify expressly any Alameda County policy or custom related to medical care, and his

18   'failure to train' allegations constitute the kind of improper conclusory statements and legal

19   conclusions that are insufficient to state a plausible claim") (citing *Iqbal*, 556 U.S. at 678).

20   Therefore, the court will dismiss plaintiff's § 1983 claim against Corizon.

21   /////

22   /////

23

_____

24   [6]  Plaintiff does not identify—through description or by name—any Corizon employee other than
     Dr. Olga Bergovsky, who has never been named as a defendant in this action.  Indeed, the only
25   allegation regarding Dr. Bergovsky is that "[p]laintiff was scheduled to see a physician employed
     by Corizon, Dr. Olga Bergovsky, on May 12, 2018."  (FAC at ¶ 21.)  Plaintiff does not allege that
26   she was actually seen by Dr. Bergovsky on May 12, 2018, or any other date for that matter.
     Plaintiff also does not allege that she had any interaction with Dr. Bergovsky.  Moreover, plaintiff
27   does not allege any conduct by Dr. Bergovsky at all, let alone conduct that both purportedly
     violated plaintiff's rights and was ratified by Corizon.
28

1    **B.      Bane Act Claim**

2           Defendant Corizon next moves to dismiss plaintiff's claim brought under California's

3    Bane Act, arguing that plaintiff has failed to allege an underlying violation of her Eighth

4    Amendment right as described above, and that plaintiff has not alleged any cognizable "threat,

5    intimidation, or coercion" as required by California Civil Code § 52.1.  (Doc. No. 17 at 9–10.)

6    Corizon also argues that plaintiff has failed to allege Corizon had a "specific intent" to violate

7    plaintiff's rights.  (*Id*. at 10.)

8           The California Bane Act protects against interference "by threat, intimidation, or

9    coercion" or an attempt to do the same "with the exercise or enjoyment by any individual or

10   individuals of rights secured by the Constitution or laws of the United States, or of the rights

11   secured by the Constitution or laws of this state."  Cal. Civ. Code § 52.1(a).  The Bane Act "does

12   not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or

13   coercion that interferes with a constitutional or statutory right."  *Venegas v. County of Los*

14   *Angeles*, 32 Cal. 4th 820, 843 (2004).  Thus, where the interference with a constitutional right is

15   the result of a defendant's mere negligence, as opposed to "deliberate or spiteful" conduct, a

16   plaintiff cannot claim violation of § 52.1.  *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th

17   947, 957–59 (2012).

18          "[T]he relevant distinction for purposes of the Bane Act is between intentional and

19   unintentional conduct."  *Dillman v. Tuolumne County*, 1:13-cv-00404-LJO-SKO, 2013 WL

20   1907379, at *20 (E.D. Cal. May 7, 2013); *see also Morse v. County of Merced*, No. 1:16-cv-

21   00142-DAD-SKO, 2016 WL 4000406, at *1–2 (E.D. Cal. July 25, 2016).  A cognizable Bane Act

22   claim requires alleged conduct that is "more egregious" than "mere negligence."  *Shoyoye*, 203

23   Cal. App. 4th at 958.  As this court has noted, district courts in California have yet to reach a

24   consensus as to whether a plaintiff bringing a Bane Act claim for deliberate indifference to

25   serious medical needs must plead threats and coercion independent of the constitutional violation

26   itself.  *See Atayde v. Napa State Hosp*., No. 1:16-cv-00398-DAD-SAB, 2016 WL 4943959, at *7–

27   8 (E.D. Cal. Sept. 16, 2016) (comparing *M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 898–99

28   (N.D. Cal. 2013) with *Moreno v. L.A. Cty. Sheriff's Dep't*, No. 2:13-cv-07570-CAS-MANx, 2015

1   WL 4652637, at *18 (C.D. Cal. Aug. 3, 2015)).  The undersigned has, however, concluded that

2   threats, coercion and intimidation are inherent in deliberate indifference claims, which "extend[] .

3   . . 'far beyond [an] ordinary tort claim[]." *Atayde*, 2016 WL 4943959, at *8 (quoting *Venegas*, 32

4   Cal. 4th at 843).  The court premised this conclusion on the fact that "[m]ere 'indifference,'

5   'negligence,' or 'medical malpractice' will not support" a claim for deliberate indifference.

6   *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013).  Rather, a

7   plaintiff must allege and show "a purposeful act or failure to respond to a prisoner's pain or

8   possible medical need . . .." *Jett*, 439 F.3d at 1096.  Accordingly, plaintiffs bringing Bane Act

9   claims for deliberate indifference to serious medical needs must only allege that the defendant

10  "knowingly deprived [them] of a constitutional right or protection through acts that are inherently

11  coercive and threatening." *Atayde*, 2016 WL 4943959, at *8, n.1; *see, e.g.*, *M. H. v. County of*

12  *Orange*, No. 19-cv-00549-JVS-ADSx, 2019 WL 4282907, at *7 (C.D. Cal. May 31, 2019)

13  ("Intentional conduct that amounts to a threat, intimidation, or coercion, for example, may include

14  deliberate indifference to a prisoner's serious medical needs by 'acts that are inherently coercive

15  and threatening' such as 'failing to provide treatment plans.'") (quoting *Lapachet v. Cal. Forensic*

16  *Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1195 (E.D. Cal. 2018)).

17          Here, plaintiff contends that she has adequately pled her Bane Act claim against Corizon

18  because she alleges that "she was treated as a malingerer involved in drug seeking behavior" and

19  that "[s]he was discounted and ignored."  (Doc. No. 20 at 3) (citing FAC at ¶¶ 21, 31).  The court

20  disagrees and finds that plaintiff has not sufficiently alleged any intentional conduct or acts that

21  are inherently coercive and threatening on the part of Corizon as required to state a cognizable

22  Bane Act claim.  Although plaintiff alleges that "the actions of each Defendant were [sic]

23  intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, deliberately

24  indifferent to Plaintiff's rights, done with actual malice, grossly negligent, negligent, and

25  objectively unreasonable" (FAC at ¶ 37), plaintiff does not allege any facts to support that

26  conclusory laundry list of mental states.

27          Moreover, as explained above, plaintiff has failed to state a cognizable § 1983 claim

28  against Corizon and thus has failed to allege that Corizon has violated her constitutional rights,

1   which is a required element for a Bane Act claim.  *See Scalia v. County of Kern*, 308 F. Supp. 3d

2   1064, 1084 (E.D. Cal. 2018) ("A plaintiff bringing a claim pursuant to the Bane Act 'must show

3   (1) intentional interference or attempted interference with a state or federal constitutional or legal

4   right, and (2) the interference or attempted interference was by threats, intimidation or

5   coercion.'") (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015), *as modified

6   on denial of reh'g* (Mar. 6, 2015)); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998)

7   (interpreting the Bane Act's use of "interferes" to mean "violates"); *Brown v. County of

8   Mariposa*, No. 1:18-cv-01541-LJO-SAB, 2019 WL 1993990, at *12 (E.D. Cal. May 6, 2019)

9   (denying motion to dismiss Bane Act claim against certain defendants for whom the plaintiff had

10   adequately stated a deliberate indifference claim, but dismissing Bane Act claim against other

11   defendants for whom plaintiff's allegations were deemed insufficient).

12        Accordingly, the court will dismiss plaintiff's Bane Act claim against Corizon due to

13   plaintiff's failure to state a cognizable claim.

14   **C.    Negligence Claim**

15        In California, the elements of a cause of action for negligence are:  (1) a legal duty to use

16   reasonable care; (2) breach of that duty; and (3) proximate cause between the breach and (4) the

17   plaintiff's injury.  *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation

18   omitted).

19        Corizon moves to dismiss the FAC's negligence claim against it, arguing that plaintiff has

20   failed to allege facts that satisfy the requisite elements of a negligence claim.  (Doc. No. 17 at 10–

21   11.)  In her opposition to Corizon's motion, plaintiff counters that "extraordinary specificity"

22   need not be alleged for "simple medical negligence" and that her "allegations make clear the

23   conduct Plaintiff complains of against Corizon."  (Doc. No. 20 at 4.)  In its reply, Corizon

24   contends that to the contrary, plaintiff has not made clear what conduct on the part of Corizon she

25   has complained about in her FAC.  (Doc. No. 21 at 6.)  Corizon asserts that plaintiff "actually

26   mentions essentially no conduct, other than via vague and *conclusory* allegations of unspecified

27   care that, in some unspecified way, was not "meaningful" or "proper."  (*Id.*)  Corizon emphasizes

28   that plaintiff has had her jail medical records for nearly a year and yet, she has failed to allege any

1   facts regarding:  "(1) which of the dozens of care provider[s] supposedly acted negligently, (2)

2   when during Plaintiff's pertinent months of incarceration they supposedly did so, (3) what

3   condition(s) they supposedly treated negligently, (4) what sort of care provider(s) they were, (5)

4   what care they did provide," and (6) "what facts supposedly indicate that any aspect of their care

5   was inadequate."  (*Id.*; Doc No. 17 at 10–11.)  Corizon argues that as a result of plaintiff's

6   insufficient factual allegations, it cannot effectively defend itself because plaintiff "conceals the

7   identity of the allegedly negligent care provider(s), conceals what they supposedly did wrong, and

8   conceals when they supposedly acted negligently."  (Doc. No. 21 at 7.)

9          The court agrees that plaintiff has not alleged facts sufficient to state a negligence claim

10   against Corizon.  The court is unable to discern from the FAC what actions Corizon allegedly

11   took or failed to take that constituted a breach of any duty owed to plaintiff.  In addition, as noted

12   above, plaintiff's allegations provide some specificity regarding the dates of her visits to the clinic

13   and the symptoms she complained of on those days, but none of those allegations describe what

14   she was told by clinic staff during those visits or what actions were—or were not—taken by clinic

15   staff on those visits.  Thus, plaintiff has not alleged what conduct Corizon employees actually

16   engaged in, how that conduct constitutes a breach of their duty to use reasonable care, and how

17   that conduct caused her injury.  Moreover, plaintiff's allegations of a lack of "proper medical

18   care," and that she received "grossly negligent care," "substandard, negligent medical care and

19   deficient attention," (FAC at ¶¶ 14, 15, 29, 31), are conclusory and lack sufficient factual support.

20   This is because plaintiff has provided few facts regarding the care she received.  Plaintiff alleges

21   that in late April 2018 she was "misdiagnosed as having the flu," but she does not allege who

22   gave her that diagnosis or what the proper diagnosis should have been.  (*See* FAC at ¶ 17.)

23   Plaintiff also alleges that in late May 2018, her complaints "were listed as methamphetamine

24   withdrawal complaints" and she received "no care other than Tylenol and antacids," but does not

25   allege that she was not experiencing such withdrawals at that time or how providing her with

26   Tylenol and antacids constituted a breach of a duty to use reasonable care.  Thus, plaintiff's

27   conclusory allegations are insufficient to state a claim for negligence against Corizon.  *See*

28   *Howard v. County of Tulare*, No. 1:16-cv-00076-SAB, 2016 WL 1756877, at *9 (E.D. Cal. May

1   3, 2016) (dismissing plaintiff's negligence claim against Corizon because plaintiff failed "to

2   adequately allege facts which demonstrate how Corizon or Tulare County breached a duty to

3   Plaintiff").

4         Accordingly, the court will dismiss plaintiff's negligence claim against Corizon due to

5   plaintiff's failure to state a claim.

6   **D.      Leave to Amend**

7         Federal Rule of Civil Procedure 15 instructs courts to "freely give leave when justice so

8   requires" and that rule is "to be applied with extreme liberality." *Eminence Capital, LLC v.*

9   *Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Nevertheless, leave to amend need not be

10  granted where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3)

11  produces an undue delay in litigation; or (4) is futile. *See Amerisource Bergen Corp. v. Dialysist*

12  *W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

13        Corizon contends that plaintiff's claims against it should be dismissed without leave to

14  amend because the court already gave plaintiff an opportunity to amend her complaint and further

15  amendment would be futile. (Doc. No. 21 at 8.) Specifically, Corizon contends that in its motion

16  for judgment on the pleadings, Corizon detailed the deficiencies in plaintiff' original complaint

17  and "clearly outlined black letter law showing what allegations would be necessary," and yet

18  plaintiff's FAC still fails to state a cognizable claim against Corizon. (*Id*.) This, according to

19  defendant Corizon, despite the fact that plaintiff "obtained her medical records many months

20  before filing [her FAC]," and it was on that basis that plaintiff had requested—and the court

21  granted—leave to amend her original complaint to allege additional facts in more detail. (*Id*.)

22  Thus, Corizon argues, if plaintiff could cure the deficiencies that Corizon has identified twice

23  now, she would have already done so. (*Id*.) At a minimum, Corizon argues, plaintiff would have

24  proffered additional allegations that she would include in any second amended complaint, but she

25  has not done so here. (*Id*.)

26        Plaintiff asserts that further leave to amend must be granted because the court has not

27  previously weighed in on the purported deficiencies identified by Corizon given that the court did

28  not rule on the merits of Corizon's motion for judgment on the pleadings. (Doc. No. 20.)

While finding this to be a somewhat close call, particularly in light of plaintiff's barebones, three-page opposition to the pending motion to dismiss, the court is not persuaded that granting further leave to amend would be futile. As discussed above, the undersigned has concluded that the FAC is deficient due to the insufficiency of the factual allegations. However, while the court expresses no opinion on the matter, it is at least conceivable that plaintiff's claims against Corizon could survive a motion to dismiss if pled sufficiently. Accordingly, the court will grant plaintiff a final opportunity to amend her complaint.

**CONCLUSION**

For all of the reasons set forth above:

1.      Defendant Corizon's motion to dismiss (Doc. No. 17) is granted;

2.      Plaintiff's § 1983 claim for deliberate indifference to her serious medical needs, Bane Act claim, and negligence claim against Corizon are dismissed with leave to amend;

3.      Any second amended complaint that plaintiff may elect to file in this action shall be filed within thirty (30) days after the issuance of this order;

4.      Defendants Obadina, M.D.; Newell, M.D.; and Laura, R.N., are dismissed from this action, and the Clerk of the Court is directed to update the docket to reflect their termination from this action as named defendants; and

/////
/////
/////
/////
/////
/////
/////
/////
/////
/////

5.      Defendant Corizon's second motion to dismiss (Doc. No. 26) is denied, without prejudice to refiling, as having been rendered moot by this order granting Corizon's first motion to dismiss (Doc. No. 17) and dismissing plaintiff's claims against Corizon.[7]

IT IS SO ORDERED.

Dated: __**July 28, 2020**__                    _____

UNITED STATES DISTRICT JUDGE

---

[7] The court notes that although Corizon styled its motion as a second motion to dismiss, the motion is based upon plaintiff's alleged failure to respond to discovery requests and thus constitutes a discovery motion. (*See generally* Doc. No. 26.) As such, any refiling of Corizon's discovery motion should be noticed for hearing before the assigned magistrate judge in this action, pursuant to Local Rule 302(c)(1).