1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARISSA FLORES,<br><br>                     Plaintiff,<br><br>        v.<br><br>COUNTY OF FRESNO, at al.,<br><br>                     Defendants. | No.  1:19-cv-01477-DAD-BAM<br><br><br>ORDER GRANTING DEFENDANT<br>CORIZON'S MOTION TO DISMISS<br>PLAINTIFF'S SECOND AMENDED<br>COMPLAINT<br><br>(Doc. No. 47) |

This matter is before the court on the motion to dismiss filed by defendant Corizon Health Inc. ("Corizon") on October 9, 2020.  (Doc. No. 47.)  Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, defendant Corizon's motion was taken under submission on the papers.  (Doc. No. 48.)  For the reasons explained below, the court will grant the pending motion to dismiss.

## BACKGROUND

On July 28, 2020, the court granted defendant Corizon's motion to dismiss plaintiff Clarissa Flores's first amended complaint ("FAC") but granted plaintiff one final opportunity to amend her complaint and attempt to cure the previously noted deficiencies.  (Doc. No. 31.)  On August 27, 2020, plaintiff filed the operative second amended complaint ("SAC") in this civil rights action naming the following defendants:  Corizon Health Inc.; County of Fresno; Sheriff Margaret Mims, in her individual and official capacities; DOES 1–20 (unknown Fresno county

1

1   law enforcement officers); and DOES 21–100 (unknown medical care providers employed by

2   Corizon).  (Doc. No. 33.)  Defendants County of Fresno and Sheriff Mims filed their answer to

3   plaintiff's SAC on September 10, 2020.  (Doc. No. 39.)  Defendant Corizon filed the pending

4   motion to dismiss on October 9, 2020, contending that plaintiff's SAC suffers from the same

5   deficiencies as her original complaint and her FAC.  (Doc. No. 47.)  On November 3, 2020,

6   plaintiff filed an opposition to the pending motion.  (Doc. No. 49.)  On November 10, 2020,

7   defendant Corizon filed a reply thereto.  (Doc. No. 50.)

8        Plaintiff alleges as follows in her SAC.[1]  Due to the untimely, grossly negligent, and

9   improper medical care that plaintiff received during her incarceration at the Fresno County Jail

10  from April through June 2018, after she was arrested on a parole violation petition, plaintiff

11  suffered loss of eyesight and went "permanently and almost totally blind."  (Doc. No. 33 at ¶¶

12  14–16.)  Plaintiff began complaining to jail officials of suffering from nausea, vomiting, and

13  headaches on April 29 and April 30, 2018, and was at that time misdiagnosed as suffering from

14  the flu.  (*Id*. at ¶ 17.)  Plaintiff went to the jail medical clinic on May 3, May 6, and May 8, 2018,[2]

15  complaining of headaches, dizziness, pain in her head, neck, and back, difficulty walking, and

16  occasional vomiting.  (*Id*. at ¶¶ 18–20.)  On May 11, 2018, plaintiff returned to the clinic,

17  complaining of pain and headaches and stating that she could not walk without assistance.  (*Id*. at

18  ¶ 21.)  Plaintiff was scheduled to see Dr. Olga Bergovsky, a physician employed by Corizon, on

19  May 12, 2018, and "[d]espite [plaintiff's] history of complaints and her presentation on that date

20  that she had upper body weakness for over the last week, that she was unable to get herself out of

21  bed, bilateral pupil dilation, and severe headaches, she was treated as a malingerer involved in

22  drug seeking behavior."  (*Id*.)  From that point forward, according to plaintiff, her medical

23  _____

24  [1]  The court has compared plaintiff's FAC with her SAC and notes that the clear majority of her allegations have remained exactly the same.  Indeed, typographical errors in certain dates alleged

25  in the FAC have been repeated verbatim in the SAC, despite the court having noted those errors in its order dismissing plaintiff's FAC with leave to amend.  (*See* Doc. No. 31 at 3 n.2; Doc. No.

26  33 at ¶¶ 18, 20.)

27  [2]  As in its order dismissing the FAC with leave to amend, the court again assumes that the dates alleged in paragraphs 18 and 20 of the SAC—May 3, 2019 and May 8, 2019—are a typographical

28  error and that plaintiff intended to allege those dates in 2018.

complaints were summarily dismissed and went untreated on repeated clinic visits.  (*Id*. at ¶ 22.)
"On her May 14, 2018 visit, she could not even walk," and on the following day, she could not
walk without assistance.  (*Id*. at ¶¶ 23, 24.)  "On May 16, 2018, she reported that she was too
weak even to come to sick call at the clinic," and in the following days, she continued to
complain of severe headaches, impaired mobility, generalized weakness, and upper back and neck
pain.  (*Id*. at ¶¶ 25–27.)

On May 23, 2018, plaintiff began complaining that she "was losing her ability to see" and
"that she thought she may have had a stroke."  (*Id*. at ¶ 28.)  "According to the notes from her
examination, she had positive signs of cerebellar involvement, her PERRLA was sluggish, finger
to nose slow and difficult, and she reported total inability to see out of her right eye with limited
vision in her left eye.  Plaintiff was dizzy and unable to walk."  (*Id*.)  The next day, plaintiff stated
she was unable to walk, but her "concerns were discounted and it was noted that she was, by
report, able to walk earlier."  (*Id*. at ¶ 29.)  On May 27, 2018, plaintiff's complaints were listed as
"methamphetamine withdrawal complaints" although she "had been incarcerated continuously for
over a month and []methamphetamine withdrawal acute phase is 24 hours and total withdrawal
lasts less than a week."  (*Id*. at ¶ 30.)  Plaintiff's health worsened, "yet she received no care other
than Tylenol and antacids."  (*Id*.)  "On June 4, 2018, plaintiff told medical staff that for the past
couple of weeks she had lost her vision," and she "received no meaningful medical care."  (*Id*. at
¶ 31.)  On June 13, 2018, plaintiff was taken to Community Regional Medical Center, and their
records state:  "Today, the jail docs took patient to her first MD appointment during all this time
and she saw Dr. Salahuddin here at clinic who saw severe optic nerve swelling."  (*Id*. at ¶ 32.)

It is asserted in the SAC that "the lack of timely and proper medical care and attention
over time, resulted in plaintiff being rendered permanently and almost totally blind."  (*Id*. at ¶ 14.)
In particular, plaintiff alleges that the medical care she received at the Fresno County Jail "was
woefully negligent and lead [sic] to plaintiff suffering severe injury, including but not limited to
blindness."  (*Id*. at ¶ 35.)  According to plaintiff, Corizon and DOES 21–100 "failed to follow
appropriate protocols for assessing, monitoring, and necessary medical treatment of plaintiff and
for insuring appropriate follow-up care for plaintiff," and that their acts and omissions "were at

3

1  all material times pursuant to the actual customs, policies, practices, and procedures of the County

2  of Fresno and/or Corizon."  (*Id*. at ¶¶ 8, 10.)

3        In addition to the above summarized allegations—all of which were included in plaintiff's

4  FAC—plaintiff includes the following new allegations in her SAC.  Plaintiff sought and begged

5  for medical treatment from defendants "almost daily" and was seen by "Corizon medical staff"

6  during fifteen separate visits in April through June 2018.  (*Id.* at ¶ 42.)  But, "[n]ot once during

7  those fifteen visits did the Corizon staff conduct any kind of meaningful diagnostic testing or seek

8  outside medical intervention on behalf of plaintiff."  (*Id*.)  As a result, plaintiff was misdiagnosed

9  with having the flu, when the "ultimate and proper diagnoses should have been that plaintiff was

10  suffering from a blood clot that was causing severe optic nerve swelling, which left untreated,

11  resulted in permanent vision impairment."  (*Id*. at ¶ 54.)  "Corizon failed to follow medical

12  standard of care protocol . . . even when it should have been obvious that the plaintiff was on a

13  serious physical decline as evidenced by her having trouble with her gait, balance[,] and vision."

14  (*Id*. at ¶ 43.)  Instead, "Corizon continued its quest of jumping to conclusions about the prisoner's

15  health issues without any testing to support Corizon's fraudulent claim that plaintiff was

16  experiencing withdrawal or simply seeking drugs."  (*Id*.)  According to plaintiff, Corizon has a

17  "policy of not referring prisoners for outside medical assistance despite clear indications that such

18  assistance was needed," i.e., Corizon has a "policy or custom of not utilizing facilities outside of

19  the jail for what they call drug seeking, malingering, and lying prisoners."  (*Id*. at ¶ 42.)  Plaintiff

20  was "told on more than one of her visits to 'shut up,' 'you're lying,' 'you're a druggie' and

21  'you're faking,' and "[a]t one point, plaintiff was laughed at and publicly mocked by both the

22  jailers and the Corizon medical staff."  (*Id*.)  "The Corizon staff told the plaintiff that she was

23  simply a low life drug seeking prisoner."  (*Id*. at ¶ 47.)

24        Based on these allegations, plaintiff asserts the following four causes of action in her

25  SAC:  (1) a 42 U.S.C. § 1983 claim against defendants Sheriff Mims, Corizon, DOES 1–20, and

26  DOES 21–100 for deliberate indifference to her serious medical needs in violation of the Eighth

27  Amendment of the U.S. Constitution; (2) a claim under California Civil Code § 52.1, the

28  California Bane Act, against all defendants; (3) a California state law negligence claim against all

1  defendants; and (4) a claim under California Government Code § 845.6 against defendants

2  County of Fresno, Mims, and DOES 1–20.  (Doc. No. 33 at 9, 11, 13, 15.)

3                                    **LEGAL STANDARD**

4          The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

5  is to test the legal sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

6  2001).  A dismissal may be warranted where there is "the lack of a cognizable legal theory or the

7  absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police*

8  *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain

9  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

10  Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege

11  "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

12  550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual

13  content that allows the court to draw the reasonable inference that the defendant is liable for the

14  misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

15          In determining whether a complaint states a claim on which relief may be granted, the

16  court accepts as true the allegations in the complaint and construes the allegations in the light

17  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

18  *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court need not assume the truth

19  of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v. Ringrose*, 788

20  F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations,

21  "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*,

22  556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a

23  formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also*

24  *Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by

25  mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the

26  plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws

27  in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

28  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

                                               5

# ANALYSIS

In moving to dismiss all of plaintiff's claims against it, defendant Corizon argues that despite adding some new allegations in her SAC, plaintiff has nevertheless failed to cure the many deficiencies that the court identified in its order dismissing plaintiff's FAC with leave to amend.  (Doc. No. 47.)  First, as to plaintiff's § 1983 claim, Corizon contends both that plaintiff has failed to sufficiently allege an underlying Eighth Amendment violation and that the allegations in plaintiff's SAC are insufficient to state a cognizable § 1983 deliberate indifference claim against it under a *Monell*[3] theory of liability.  (*Id.* at 6–12.)  Second, Corizon argues that plaintiff has failed to state a cognizable Bane Act claim against it because "she offers no factual allegations reflecting any cognizable 'threat, intimidation, or coercion' by any Corizon employee."  (*Id.* at 13.)  Third, Corizon contends that plaintiff has failed to state a cognizable negligence claim against it because "she offers no facts showing that any particular Corizon care provider owed a duty, breached it, and/or caused the purported harm alleged."  (*Id.* at 14.)

## A.      Section 1983 Claim for Deliberate Indifference to Serious Medical Needs

To succeed on a § 1983 claim, a plaintiff must allege and ultimately show that:  (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right.  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971–72 (9th Cir. 2011) (citing *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006)).  Here, plaintiff alleges that Corizon acted under color of state law to deprive plaintiff of her Eighth Amendment right to be free of cruel and unusual punishment, in violation of § 1983, by providing inadequate medical care.  (Doc. No. 33 at ¶ 44.)

To state an Eighth Amendment claim based on alleged inadequate medical treatment in prison, an inmate must allege facts showing "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "In the Ninth Circuit, the test for deliberate indifference consists of two parts." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  "First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a

---

[3]  *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978).

prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Id.* (citation omitted). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id.* This second prong "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). However, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.*

As to entity liability for alleged constitutional violations, it is well-established that an entity "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [an entity] cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. To establish entity liability under *Monell*, a plaintiff must ultimately prove: "(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the [entity] had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted). A plaintiff can show the existence of an entity's policy in one of three ways. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). First, an entity may be held liable when it acts "pursuant to an expressly adopted policy." *Id.* (citing *Monell*, 436 U.S. at 694). Second, an entity may be held liable for a "longstanding practice or custom." *Id.* Such circumstances may arise when, for instance, the entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)). Third, an entity may be held liable when "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

To state a cognizable *Monell* claim against Corizon, plaintiff then "must demonstrate that an 'official policy, custom, or pattern' on the part of [Corizon] was 'the actionable cause of the claimed injury.'" *Tsao*, 698 F.3d at 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*,

533 F.3d 1010, 1022 (9th Cir. 2008)); *see also Ellis v. Corizon Inc.*, 787 F. App'x 453, 453–454 (9th Cir. 2019) (finding that the district court "properly granted summary judgment on Ellis's deliberate indifference claim against defendant Corizon Inc. because Ellis failed to establish a genuine dispute of material fact as to whether any policy or custom of Corizon Inc. caused him to suffer a constitutional injury")[4]; *Larry v. Corizon Health*, No. 17-cv-00156-SVW-PJW, 2018 WL 6136790, at *3 (C.D. Cal. Feb. 2, 2018), *report and recommendation adopted*, 2018 WL 6137168 (C.D. Cal. Mar. 6, 2018) (dismissing a § 1983 claim against Corizon where the plaintiff failed to set forth "the policies, practices, customs, or patterns [that] were the moving force behind the alleged deprivations").

As the district court in *McFarland v. City of Clovis*, 163 F. Supp. 3d 798, 802 (E.D. Cal. 2016) explained:

> Allegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where they:   (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur.

Here, plaintiff asserts a § 1983 claim for deliberate indifference to her serious medical needs against defendant Corizon based on her allegations that Corizon acted "with deliberate indifference to [her] complaints of headaches, confusion, and increasing vision problems" and "failed to attend to her obvious medical needs despite a substantial risk that her condition could deteriorate to the point of plaintiff becoming blind and, indeed she became blind because of the deliberate indifference to her serious medical needs." (Doc. No. 33 at ¶ 41.)  Plaintiff further asserts that "in their dealings with plaintiff, Corizon employees engaged in their policy or custom of not utilizing facilities outside of the jail for what they call drug seeking, malingering and lying prisoners."  (Doc. No. 33 at ¶ 42.)

In the pending motion to dismiss, defendant Corizon argues that plaintiff's conclusory allegations are insufficient to state a cognizable § 1983 deliberate indifference claim against it

---

[4]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

because plaintiff has failed to adequately plead entity liability under *Monell*.  (Doc. No. 47 at 10.)  In particular, defendant Corizon emphasizes that plaintiff still has not specified the content or nature of the purportedly deficient policy or custom, or alleged facts to show how such policy reflects indifference by Corizon or caused any underlying violation of plaintiff's constitutional rights.  (*Id.* at 10–11.)  Defendant Corizon argues that the policy or custom described by plaintiff in the SAC is simply too vague and conclusory.  (*Id.* at 11.)  That is, plaintiff alleges that defendant Corizon has a policy of not referring patients for outside medical assistance if the patients are "drug seeking, malingering, or lying," or if the patients exhibited a "clear indication" (in some unspecified way) that outside medical assistance was somehow needed.  (*Id.*)  As to patients who are perceived as malingering, defendant Corizon argues that such a policy does not reflect deliberate indifference because "it would clash with judicial experience and common sense to conclude that a supposed policy of not sending to outside care patients who lack a legitimate medical need for any extra care somehow reflected policymaker indifference."  (*Id.* at 12.)  As to patients who exhibit "clear indications" that referral to outside medical providers is needed, defendant Corizon contends that plaintiff has failed to allege the specific nature and content of such a policy because she does not specify what circumstances constitute "clear indications" that a patient needs "outside medical assistance."  (*Id.* at 11.)

In her opposition to the pending motion, rather than addressing defendant Corizon's arguments, plaintiff instead focuses on the deficiencies identified by the court in its order dismissing her FAC and asserts that her SAC has cured those deficiencies.  (Doc. No. 49 at 2.)  In particular, plaintiff emphasizes that she now alleges:  (i) the existence of a policy or custom by defendant Corizon of not referring malingering or drug seeking patients for outside medical assistance; (ii) the conduct by Corizon (e.g., that Corizon "continued its quest of jumping to conclusions" about prisoners' health issues and "relied on [its] policy and/or custom of blaming the prisoner and the prisoner's past rather than call for a medical transport to a nearby hospital"); and (iii) the failures of Corizon to "conduct[] proper diagnostic testing, or mak[e] a referral for plaintiff to be seen by outside medical practitioners."  (*Id.* at 2–4.)   As to conduct by individual Corizon employees in their dealings with plaintiff, plaintiff argues that she does not need to

specify any conduct by individual Corizon employees in order to avoid dismissal of her *Monell* claim against Corizon because "Corizon is on notice of *who* was involved in plaintiffs' care since the care providers would be identified in records created and maintained by Corizon." (*Id.* at 4.)

In its reply, defendant Corizon reiterates that plaintiff has failed to plausibly allege facts satisfying the elements of a deliberate indifference claim as to any individual Corizon employee and thus fails to state a claim against Corizon as an entity. (Doc. No. 50 at 3.) In addition, defendant Corizon argues that plaintiff's failure to allege specific *conduct* by individual Corizon employees is not "cured" by plaintiff's assertion that Corizon can look at its own records to identify *the names* of its employees who were involved in providing plaintiff's care. (Doc. No. 50 at 2.)

The court agrees that plaintiff has not sufficiently alleged a deliberate indifference claim against defendant Corizon in her SAC. Although plaintiff attempts to allege the existence of a policy or custom on the part of Corizon, her vague descriptions of that policy lack the requisite specificity as to the nature and content of the policy. *See Deloney v. County of Fresno*, No. 1:17-cv-01336-LJO-EPG, 2018 WL 3388921, at *8 (E.D. Cal. July 11, 2018) (finding that the plaintiff's "generalized and conclusory allegations do not provide sufficient factual content to plausibly infer that a Corizon policy or custom existed or that it was the 'moving force behind the constitutional violation,' as required to state a *Monell* claim against an entity such as Corizon"); *Klahn v. Alameda Cnty. Sheriff's Dep't*, No. 16-cv-00833-JCS, 2017 WL 565050, at *17 (N.D. Cal. Feb. 13, 2017) (dismissing a deliberate indifference claim under *Monell* where the plaintiff did "not identify expressly any Alameda County policy or custom related to medical care, and his 'failure to train' allegations constitute the kind of improper conclusory statements and legal conclusions that are insufficient to state a plausible claim") (citing *Iqbal*, 556 U.S. at 678). In addition, the court notes that plaintiff merely alleges in conclusory fashion that Corizon's conduct "of not referring prisoners for outside assistance when needed was undertaken so consistently and frequently such that it should be deemed Corizon's custom" (Doc. No. 33 at ¶ 42), but she points only to Corizon's "dealings with plaintiff," which are fairly characterized as the kind of isolated and sporadic events that do not support entity liability based on an improper custom or policy.

1   *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not

2   be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

3   duration, frequency and consistency that the conduct has become a traditional method of carrying

4   out policy.").  At most, plaintiff's allegations that jail staff and Corizon staff mocked her *at one*

5   *point* and that on *more than one visit* to the clinic she was told that she was "lying" and "a

6   druggie" might be deemed sufficient to allege a frequent and consistent practice of mocking and

7   accusing prisoners who are seen in the clinic of lying and being "druggies."  But those allegations

8   are insufficient to allege that Corizon employees frequently and consistently engaged in a practice

9   of not referring patients to outside providers when they perceived that the patients were lying,

10  malingering, or drug seeking—the purported custom or policy that plaintiff describes in the SAC.

11          Moreover, the court is persuaded by defendant Corizon's argument that the purported

12  policy that plaintiff describes in the SAC is not in itself suggestive or indicative of deliberate

13  indifference by Corizon.  (Doc. No. 47 at 12) (arguing that because plaintiff's "*Monell* theory

14  appears to concern only patients who are perceived as malingering, [] it would clash with judicial

15  experience and common sense to conclude that a supposed policy of not sending to outside care

16  patients who lack a legitimate medical need for any extra care somehow reflected policymaker

17  indifference.")  At bottom, plaintiff describes a policy in which Corizon employees allegedly do

18  not refer patients to medical facilities outside of the jail if they perceive the patients to be "drug

19  seeking, malingering, or lying," and that their perceptions in this regard are reached by jumping

20  to conclusions, blaming prisoners, and not conducting "proper diagnostic testing."  (Doc. No. 33

21  at ¶¶ 42–43.)  But these allegations are insufficient to state a cognizable claim against Corizon for

22  deliberate indifference, particularly given that "[m]ere negligence in diagnosing or treating a

23  medical condition, without more, does not violate a prisoner's Eighth Amendment rights."

24  *Hutchinson*, 838 F.2d at 394.  Plaintiff simply does not explain how the policy she has described

25  in the SAC is constitutionally deficient, or how such a deficiency was obvious and the

26  constitutional injury likely to occur.  *See McFarland*, 163 F. Supp. 3d at 802.

27          In addition, the court observes that despite quoting the portions of the court's prior order

28  that identified various deficiencies in her FAC, plaintiff has inexplicably repeated—verbatim—

the same deficient allegations in her SAC.  For example, the court previously noted that despite

providing "some specificity regarding the dates of her visits to the jail medical clinic and the

symptoms she complained of on those days," plaintiff's allegations in her FAC did not describe

"what conduct Corizon employees actually engaged in during her visits to the jail medical clinic,"

"what she was told by clinic staff during those visits, or what actions were—or were not—taken

by clinic staff on those visits."  (Doc. No. 31 at 9.)  In her SAC, plaintiff repeats those same

allegations without any modification or elaboration to address the deficiencies previously

identified by the court.  (Doc. No. 33 ¶¶ 13–38.)  As another example, the court previously noted

that plaintiff's only allegation regarding any individual Corizon employee—by description or by

name—was her allegation that "[p]laintiff was scheduled to see a physician employed by

Corizon, Dr. Olga Bergovsky, on May 12, 2018."  (Doc. No. 31 at 10 n. 6) (citing Doc. No. 14 at

¶ 21.)  In its prior order, the court explained why that allegation was plainly insufficient:

> Plaintiff does not allege that she was actually seen by Dr.
> Bergovsky on May 12, 2018, or any other date for that matter.
> Plaintiff also does not allege that she had any interaction with Dr.
> Bergovsky.  Moreover, plaintiff does not allege any conduct by Dr.
> Bergovsky at all, let alone conduct that both purportedly violated
> plaintiff's rights and was ratified by Corizon.

(Doc. No. 31 at 10 n. 6.)  Yet, despite the court order having pointed out the flaws in this

allegation, plaintiff nevertheless included the exact same allegation in her SAC.  (*See* Doc. No. 33

at 21.)  Indeed, in opposing the pending motion to dismiss, plaintiff points to that single

allegation to counter defendant Corizon's argument that she had failed to allege any conduct by

any individual Corizon employees in her SAC.

Accordingly, the court concludes that plaintiff has again failed to allege the existence of a

policy or custom by Corizon, and thus the allegations of her *Monell* claim under brought pursuant

to § 1983 against Corizon in the SAC fail to state a cognizable claim.  Therefore, the court will

dismiss plaintiff's § 1983 claim against defendant Corizon.

**B.    Bane Act Claim**

Defendant Corizon next moves to dismiss plaintiff's claim brought under California's

Bane Act, arguing that in her SAC, as with her FAC, plaintiff has again failed to allege an

underlying violation of her Eighth Amendment right as described above and failed to allege any cognizable "threat, intimidation, or coercion" as required by California Civil Code § 52.1.  (Doc. No. 47 at 13.)  Defendant Corizon also argues that plaintiff has failed to allege Corizon had a "specific intent" to violate plaintiff's rights.  (*Id.*)

The California Bane Act protects against interference "by threat, intimidation, or coercion" or an attempt to do the same "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."  Cal. Civ. Code § 52.1(a).  The Bane Act "does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right."  *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004).  Thus, where the interference with a constitutional right is the result of a defendant's mere negligence, as opposed to "deliberate or spiteful" conduct, a plaintiff cannot claim violation of § 52.1.  *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 957–59 (2012).

"[T]he relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct."  *Dillman v. Tuolumne County*, 1:13-cv-00404-LJO-SKO, 2013 WL 1907379, at *20 (E.D. Cal. May 7, 2013); *see also Morse v. County of Merced*, No. 1:16-cv-00142-DAD-SKO, 2016 WL 4000406, at *1–2 (E.D. Cal. July 25, 2016).  A cognizable Bane Act claim requires alleged conduct that is "more egregious" than "mere negligence."  *Shoyoye*, 203 Cal. App. 4th at 958.  As this court has noted, district courts in California have yet to reach a consensus as to whether a plaintiff bringing a Bane Act claim for deliberate indifference to serious medical needs must plead threats and coercion independent of the constitutional violation itself.  *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 WL 4943959, at *7–8 (E.D. Cal. Sept. 16, 2016) (comparing *M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 898–99 (N.D. Cal. 2013) with *Moreno v. L.A. Cty. Sheriff's Dep't*, No. 2:13-cv-07570-CAS-MAN, 2015 WL 4652637, at *18 (C.D. Cal. Aug. 3, 2015)).  The undersigned has, however, concluded that threats, coercion and intimidation are inherent in deliberate indifference claims, which "extend[] . . . 'far beyond [an] ordinary tort claim[].'"  *Atayde*, 2016 WL 4943959, at *8 (quoting *Venegas*, 32

1  Cal. 4th at 843).  The court premised this conclusion on the fact that "[m]ere 'indifference,'

2  'negligence,' or 'medical malpractice' will not support" a claim for deliberate indifference.

3  *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013).  Rather, a

4  plaintiff must allege and show "a purposeful act or failure to respond to a prisoner's pain or

5  possible medical need . . .."  *Jett*, 439 F.3d at 1096.  Accordingly, plaintiffs bringing Bane Act

6  claims for deliberate indifference to serious medical needs may sufficiently state those claims by

7  alleging that the defendant "knowingly deprived [them] of a constitutional right or protection

8  through acts that are inherently coercive and threatening."  *Atayde*, 2016 WL 4943959, at *8, n.1;

9  *see, e.g*., *M. H. v. County of Orange*, No. 19-cv-00549-JVS-ADS, 2019 WL 4282907, at *7 (C.D.

10  Cal. May 31, 2019) ("Intentional conduct that amounts to a threat, intimidation, or coercion, for

11  example, may include deliberate indifference to a prisoner's serious medical needs by 'acts that

12  are inherently coercive and threatening' such as 'failing to provide treatment plans.'") (quoting

13  *Lapachet v. Cal. Forensic Med. Grp., Inc*., 313 F. Supp. 3d 1183, 1195 (E.D. Cal. 2018)).

14      Here, plaintiff contends that she has adequately pled her Bane Act claim against Corizon

15  because she alleges that Corizon's "conduct and acts were intentionally coercive and threatening"

16  and Corizon "knowingly deprived plaintiff of a constitutional right or protection through acts that

17  are inherently coercive and threatening."  (Doc. Nos. 49 at 5; 33 at ¶ 47.)  However, these

18  allegations are conclusory and merely parrot the elements of a Bane Act claim, which is

19  insufficient to state a cognizable claim for relief.

20      As to the specific allegedly coercive and threatening act, plaintiff alleges that unspecified

21  "defendants could have and should have provided a treatment plan to plaintiff that should have

22  included having her transported to another medical facility, such as a hospital, for proper testing,

23  through evaluation and treatment."  (Doc. No. 33 at ¶ 47.)  Unlike in the cases cited above in

24  which courts have pointed to a failure to provide treatment plans as an example of an inherently

25  coercive and threatening act in the context of deliberate indifference to serious medical needs,

26  here plaintiff does not allege that she was never provided with a treatment plan.  *See Atayde*, 2016

27  WL 4943959, at *8 (noting that plaintiff's allegations that defendants "never provided a treatment

28  plan for decedent; failed to refer decedent to any state hospital or psychiatric facility and failed to

provide decedent with constant observation but rather left him alone and unsupervised" were "allegations that go far beyond mere reliance on the inherently coercive nature of detention in order to state a Bane Act claim").  Instead, plaintiff essentially calls into question the adequacy of the treatment she received in light of her alleged misdiagnosis of having the flu (for which she was given Tylenol and antacids) and asserts her belief that she should have been transported to an outside medical facility for testing, evaluation, and treatment.  (Doc. No. 33 at ¶¶ 17, 30, 47.) Plaintiff's allegations in this regard are insufficient to allege any intentional conduct or acts that are inherently coercive and threatening on the part of Corizon as required to state a cognizable Bane Act claim.

In addition, although plaintiff alleges in her SAC, as she did in her FAC, "that the actions and omissions of each Defendant were [sic] intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, deliberately indifferent to Plaintiff's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable," the court again notes that plaintiff does not allege any facts to support that conclusory laundry list of mental states.  (Doc. No. 33 at ¶ 37.)  Plaintiff does allege in her SAC that "Corizon staff mocked, laughed at, yelled at and publicly humiliated [her] with their ridicule," and that "Corizon staff verbally abused and bullied [her] by screaming at her and calling her a 'liar,' a 'faker,' [and] a 'druggie.'"  (Doc. No. 33 at ¶ 47.)  At most, those allegations may suggest that Corizon staff's conduct was "deliberate or spiteful."  *See Shoyoye*, 203 Cal. App. 4th at 957–59.  But those allegations also suggest that Corizon staff perceived plaintiff as malingering and engaging in drug-seeking behavior—as opposed to Corizon staff perceiving legitimate medical needs and deliberately disregarding those needs.  As explained above, plaintiff has not sufficiently alleged that Corizon's purported policy (of not referring malingering patients to an outside medical facility) would reflect deliberate indifference to the serious medical needs of patients.

Because plaintiff has failed to state a cognizable § 1983 claim against Corizon, she has failed to allege that Corizon has violated her constitutional rights, which is a required element for a Bane Act claim.  *See Scalia v. County of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) ("A plaintiff bringing a claim pursuant to the Bane Act 'must show (1) intentional interference or

1    attempted interference with a state or federal constitutional or legal right, and (2) the interference

2    or attempted interference was by threats, intimidation or coercion.'") (quoting *Allen v. City of*

3    *Sacramento*, 234 Cal. App. 4th 41, 67 (2015), *as modified on denial of reh'g* (Mar. 6, 2015)); *see*

4    *also Jones v. Kmart Corp*., 17 Cal. 4th 329, 338 (1998) (interpreting the Bane Act's use of

5    "interferes" to mean "violates"); *Brown v. County of Mariposa*, No. 1:18-cv-01541-LJO-SAB,

6    2019 WL 1993990, at *12 (E.D. Cal. May 6, 2019) (denying a motion to dismiss a Bane Act

7    claim against certain defendants as to whom the plaintiff had adequately stated a deliberate

8    indifference claim, but dismissing the Bane Act claim against other defendants as to whom

9    plaintiff's allegations were deemed insufficient); *Est. of Miller v. Cty. of Sutter*, No. 2:20-cv-

10   00577-KJM-DMC, 2020 WL 6392565, at *18 (E.D. Cal. Oct. 30, 2020) (dismissing Bane Act

11   claims against certain defendants for whom plaintiffs had not sufficiently stated a cognizable §

12   1983 claim for deliberate indifference to their serious medical needs).

13          Accordingly, the court will dismiss plaintiff's Bane Act claim against defendant Corizon

14   due to plaintiff's failure to state a cognizable claim.

15   **C.      Negligence Claim**

16          In California, the elements of a cause of action for negligence are:  (1) a legal duty to use

17   reasonable care; (2) breach of that duty; and (3) proximate cause between the breach and (4) the

18   plaintiff's injury.  *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation

19   omitted).

20          Corizon moves to dismiss plaintiff's negligence claim against it and argues that, as with

21   her FAC, plaintiff again fails in her SAC to allege facts that satisfy the requisite elements of a

22   negligence claim against it.  (Doc. No. 47 at 14.)  In her opposition to Corizon's pending motion,

23   plaintiff again focuses on the deficiencies identified by the court in its prior order dismissing her

24   FAC's negligence claim against defendant Corizon.  (Doc. No. 49 at 6.)  In response to the

25   court's statement that it was "unable to discern from the FAC what actions Corizon allegedly took

26   or failed to take that constituted a breach of any duty owed to plaintiff" (Doc. No. 31 at 14),

27   plaintiff asserts that in her SAC, she has now alleged several "actions [that] Corizon took or failed

28   to take," including failure to provide "prompt and appropriate medical care," to conduct testing,

to summon emergency medical care, and "to arrange for plaintiff to be seen by medical professionals outside of the jail (such as a hospital)." (Doc. Nos. 49 at 6; 33 at ¶ 51.) However, these allegations are merely conclusory and are not tethered to any of plaintiff's visits to the clinic as alleged in the SAC or to any individual Corizon care provider. *See Est. of Miller*, 2020 WL 6392565, at *17 (concluding that a plaintiff's vague and conclusory assertions of the defendants' liability for negligence, without supporting factual allegations, were insufficient to survive the defendants' motion to dismiss plaintiff's negligence claim).

Moreover, despite the court noting in its prior order that plaintiff "provide[d] some specificity regarding the dates of her visits to the clinic and the symptoms she complained of on those days, [] none of those allegations describe what she was told by clinic staff during those visits or what actions were—or were not—taken by clinic staff on those visits" (Doc. No. 31 at 14), plaintiff did not elaborate or modify any of those allegations in her SAC—instead, she repeated them verbatim. (Doc. No. 33 at ¶¶ 17–32.) Contending that she has sufficiently addressed the deficiencies previously identified by the court in this regard, plaintiff points to the following additional allegation appearing in her SAC:

> When Plaintiff was misdiagnosed in late April 2018 as having the flu, and then subsequent failures by Defendants as addressed above, the Corizon employee's name is currently unknown to Plaintiff, is known to Corizon, and will likely be determined in the course of discovery in this litigation. The ultimate and proper diagnosis should have been that Plaintiff was suffering from a blood clot that was causing severe optic nerve swelling, which left untreated, resulted in permanent vision impairment.

(Doc. No. 33 at ¶ 54.) Plaintiff also points to the allegation in her SAC that in late May 2018, she was not experiencing methamphetamine withdrawals, so "providing plaintiff with Tylenol and antacids constituted a breach of a duty to use reasonable care because reasonable care dictated that she be referred out for proper medical evaluation." (Doc. No. 33 at ¶ 55.)

In its reply, defendant Corizon argues that "plaintiff offers no factual allegations indicating that it was unreasonable for the unidentified person to conclude from plaintiff's flu-like symptoms in late-April that plaintiff had the flu," and that despite her contention that she ultimately should have been diagnosed as suffering with a blood clot, "she offers no facts

1  suggesting that the alleged blood clot or any detectable signs thereof even existed as of 'late-

2  April.'"  (Doc. No. 50 at 8.)  Similarly, Corizon argues that plaintiff's allegation regarding an

3  unspecified person supposedly incorrectly documenting her symptoms in late-May as

4  "methamphetamine withdrawal complaints" is insufficient to state a negligence claim against

5  Corizon because plaintiff does not allege that the unspecified person was a Corizon care provider,

6  or that this person ever saw or interacted with plaintiff, or what information this person had

7  regarding plaintiff's methamphetamine abuse, or what plaintiff may have told this unspecified

8  person, or what responsive measures that person took as a result.  (Doc. No. 50 at 9.)  Thus,

9  according to Corizon, plaintiff's allegations fall short of suggesting that it or any particular

10  Corizon care providers breached a duty to use reasonable care.  (*Id.*) (citing *Hartmann v. Cal.*

11  *Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) ("Where a complaint pleads facts

12  that are merely consistent with a defendant's liability, it stops short of the line between possibility

13  and plausibility of entitlement to relief.") (citation omitted)).

14       The court agrees that plaintiff has not alleged facts in her SAC sufficient to state a

15  cognizable negligence claim against Corizon.  Plaintiff fails to specify any conduct by any

16  individual Corizon care provider, let alone identify facts that, if proven would show that such

17  conduct constitutes negligence.  Even if plaintiff had alleged that individual Corizon care

18  providers had misdiagnosed her with the flu and incorrectly listed her complaints as

19  methamphetamine withdrawals, her allegations would nevertheless fall short of stating a

20  negligence claim against Corizon.  Allegations that Corizon had a legal duty to use reasonable

21  care (in the provision of medical care, diagnosis, prognosis, and treatment) and that Corizon

22  breached that duty (by failing to provide prompt and appropriate medical care and refer plaintiff

23  to medical care providers outside of the jail) and that such a breach caused plaintiff's injury of

24  vision impairment are conclusory allegations that are not sufficient to state a negligence claim

25  against Corizon.  *See Alexander v. Diaz*, No. 20-cv-100-CAB-KSC, 2020 WL 2794546, at *6

26  (S.D. Cal. May 29, 2020) (dismissing a negligence claim brought by a plaintiff whose request for

27  a second opinion regarding a dental surgery was delayed by the defendants and the delay rendered

28  surgery impossible, because the plaintiff had failed "to provide specific allegations as to breach

1  and causation," and "[t]he fact that a harm occurred and that duties exist does not show how the

2  duties were breached and whether those breaches caused the harm"); *see also Howard v. County*

3  *of Tulare*, No. 1:16-cv-00076-SAB, 2016 WL 1756877, at *9 (E.D. Cal. May 3, 2016)

4  (dismissing plaintiff's negligence claim against Corizon because the plaintiff failed "to

5  adequately allege facts which demonstrate how Corizon or Tulare County breached a duty to

6  Plaintiff").

7      Accordingly, the court will dismiss plaintiff's negligence claim against Corizon due to

8  plaintiff's failure to state a claim.

9  **D.     Leave to Amend**

10     Federal Rule of Civil Procedure 15 instructs courts to "freely give leave when justice so

11  requires" and that rule is "to be applied with extreme liberality." *Eminence Capital, LLC v.*

12  *Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  Nevertheless, leave to amend need not be

13  granted where the amendment:  (1) prejudices the opposing party; (2) is sought in bad faith; (3)

14  produces an undue delay in litigation; or (4) is futile.  *See Amerisource Bergen Corp. v. Dialysist*

15  *W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

16     In opposing the pending motion, plaintiff maintains that her SAC sufficiently alleges

17  claims against Corizon and asserts that providing any further specificity would require discovery.

18  (Doc. No. 49 at 7.)  Plaintiff requests leave to file a third amended complaint if the court finds her

19  SAC to be lacking, though she requests that "the deadline for further amendment be several

20  months down the road to allow plaintiff the opportunity to obtain, through discovery, the

21  information this court deems necessary to support the allegations in the operative complaint."

22  (*Id.*)

23     Corizon contends that plaintiff's claims against it should be dismissed without leave to

24  amend because the court has already given plaintiff two opportunities to amend her complaint and

25  further amendment would be futile.  (Doc. No. 50 at 10.)  Defendant Corizon emphasizes that

26  plaintiff ignored many of the deficiencies the court previously identified in its order dismissing

27  plaintiff's FAC and repeated the same deficient allegations verbatim in her SAC.  (*Id.*)  In

28  addition, defendant Corizon notes that as of the date it filed its reply brief, November 10, 2020,

discovery had been open for nine months, and "plaintiff has personal knowledge of her care provider interactions, and her attorney has had the medical records fully detailing her care for over a year." (*Id.*)  Accordingly, Corizon argues that "if plaintiff actually were able to offer the requisite factual allegations in a manner that comported with Rule 11, there is no reason why she would not have revealed them long ago." (*Id.*)

The court notes that plaintiff's attorney had obtained plaintiff's medical records months before filing the FAC, and in the order dismissing plaintiff's FAC, the court had granted plaintiff "a *final* opportunity to amend her complaint." (Doc. No. 31 at 15–16) (emphasis added). Plaintiff has now had that final opportunity, and yet she continued to allege verbatim the same deficient allegations in her SAC that she had alleged in her FAC.  Notably, plaintiff's counsel has provided no meaningful explanation for the failure to allege facts with more specificity and detail in her SAC, despite plaintiff's access to the relevant medical records and the court's warning that this would be plaintiff's final opportunity to state cognizable claims against defendant Corizon. Accordingly, the court agrees with defendant Corizon that allowing further amendment under these circumstances would be futile.  The court is also not persuaded that it should grant plaintiff's wholly unsupported request for additional time to first conduct discovery before amending her complaint further, particularly given that plaintiff and her attorney already have her medical records and plaintiff has personal knowledge of her experiences with the care providers at the Fresno County Jail.

Thus, defendant Corizon's motion to dismiss will be granted without further leave to amend.

### CONCLUSION

For all of the reasons set forth above:

1.    Defendant Corizon's motion to dismiss (Doc. No. 47) is granted;

2.    Plaintiff's § 1983 claim for deliberate indifference to her serious medical needs, Bane Act claim, and negligence claim against Corizon are dismissed without leave to amend; and

/////

3.      Defendant Corizon and DOES 21-100 are dismissed from this action.[5]

IT IS SO ORDERED.

Dated:   **August 2, 2021**                              _Dale A. Drozd_
                                            UNITED STATES DISTRICT JUDGE

---

[5]  Plaintiff has not alleged any specific facts with respect to DOES 21-100, whom plaintiff alleges are "employees and/or agents of Defendant CORIZON, working as medical directors or medical providers of Defendant COUNTY OF FRESNO's jails, responsible for overseeing and providing medical care to prisoners and detainees, and were acting within the course and scope of that employment and/or agency relationship." (Doc. No. 33 at ¶ 8.)  Accordingly, the court will also dismiss DOES 21-100 from this action due to plaintiff's failure to state a cognizable claim against them for the same reasons that plaintiff has failed to state a cognizable claim against Corizon. *See Silverton v. Dep't of Treasury of U. S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."); *see also Villarreal v. Cty. of Monterey*, 254 F. Supp. 3d 1168, 1194–95 (N.D. Cal. 2017) (dismissing Doe defendants where the plaintiff's complaint provided "no information about Does 1–25 other than the general allegations that they committed wrongdoing and their actions can be attributed to the City," given that the court granted the city's motion to dismiss plaintiff's claims against it).